UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

──────────────────────────

EDGAR ATCHISON,

                    Petitioner,

          -vs-                          **No. 6:14-CV-06574(MAT)**
                                        **DECISION AND ORDER**
DALE ARTUS, Superintendent,

                    Respondent.

──────────────────────────

## I.   Introduction

Represented by counsel, Edgar Atchison ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment entered on May 2, 2012, in New York State Supreme Court, Erie County (Wolfgang, J.), following a jury verdict convicting him of criminal possession of a weapon in the second degree, unlawful fleeing a police officer in a motor vehicle in the third degree and reckless driving.

## II.  Factual Background and Procedural History

Under Erie County Indictment No. 01094-2011, Petitioner was charged with Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law ("P.L.") § 265.03(3)), Unlawfully Fleeing a Police Officer in a Motor Vehicle (P.L. § 270.25) and Reckless Driving (N.Y. Vehicle & Traffic Law ("V.T.L.") § 1212).

On March 23, 2011, at about 12:45 a.m., the City of Buffalo Police Department received two 911 calls regarding "unknown trouble" at 66 Humber Street involving a "suspicious female, light-skinned woman, early twenties, on porch, about five foot six,

black leather jacket." T.139, 155, 193. Officers Harrington and Kindzierski responded in their patrol car.

Upon arriving on Humber, the officers were headed south. A white pickup truck facing north with its headlights on drew their attention when it pulled forward and extinguished its lights. T.143-33, 187. The officers continued south on Humber and observed a woman matching the description given in the 911 call on the porch at 66 Humber. Officer Kindzierski got out of the patrol car and approached her, while Officer Harrington walked toward the white pickup truck.

Meanwhile, the woman on the porch was pointing at the truck, the occupants of which Officer Harrington was attempting to engage in conversation. T.160, 184, 189.  However, Petitioner did not respond to his inquiry and fled the scene. T.170, 591. Officer Harrington pursued Petitioner's vehicle in his patrol car, and observed Petitioner pass through several stop signs without slowing down. Officer Harrington was required to accelerate to about 50 miles per hour to gain ground. T.592.

During the chase, Officer Harrington observed the vehicle pull onto the left side of Northumberland Street, slow down briefly and quickly, and then speed off again. T.595. After about eight-tenths of a mile, the truck pulled over and stopped at East Delavan near Weber Avenue. T.598-99. Petitioner was forcibly removed from the truck.

-2-

The police ultimately recovered a silver handgun on a residential lawn. Officer Pitts interviewed Petitioner's female passenger, Carlette Montgomery ("Montgomery"), who advised him that a handgun was thrown from the vehicle. T.643. According to Officer Pitts, Montgomery told him "she didn't want to go to jail for this." Id.

Lieutenant O'Rourke questioned Petitioner at the scene regarding why he had fled the scene when Officer Harrington approached him. Petitioner explained that he just wanted to "get a date" with Montgomery, that is, pay her to have sex with him. He fled from the police because he did not want to go to jail for soliciting a prostitute and he did not want his wife to find out. Petitioner testified that when he turned onto Northumberland Street, Montgomery announced that she was in possession of a weapon, and demanded that he pull over and let her out. As Montgomery fumbled with the gun, Petitioner grabbed it and threw it out of the vehicle. T.940. Petitioner indicated that he was going to let her out when he slowed down, but he panicked when he saw the police vehicle approaching, so he sped off again.

Montgomery testified for the defense that she had gotten into Petitioner's vehicle on the night of March 23rd intending to "get money" by "turning a date[,]" T.850, i.e., getting paid by Petitioner for having sex with him. When a police cruiser approached Petitioner's truck, and an officer ordered them to "get

the fuck out of the car," Petitioner drove away. T.852. While being pursued by the police, Montgomery told Petitioner she had a handgun and pulled it out of her pants. Taking the handgun from her, Petitioner slowed down and threw the gun out of the window. Montgomery estimated that Petitioner was in possession of the handgun for "two point two seconds." T.854-55. Petitioner sped up again but came to a stop a short time later, and the police took them both into custody.

Montgomery, who had a lengthy criminal record, gave the police a false name because she believed there was a warrant out for her arrest. Eventually, after the police discovered her real name, Montgomery said that the gun belonged to Petitioner because the police promised her she could go home if she implicated Petitioner. T.859-60.

Montgomery testified under oath at the felony hearing and admitted that the gun belonged to her. She gave a similar statement to a private investigator, and was advised by an attorney that a conviction for possession of a weapon carried a potential sentence of 15 years. T.870-81. Montgomery explained that because she was a person of the streets, she did not want to have "somebody go down for [her]." T.872. Montgomery testified, "That's my gun. I'm not going to put it on him." Id.

The jury returned a verdict convicting Petitioner on all charges. He was sentenced to a determinate term of 15 years in

-4-

prison plus 5 years of post-release supervision on count one, and to definite terms of 1 year in prison and 6 months in prison on counts two and three, respectively. All sentences were set to run concurrently with each other.

Represented by new counsel on appeal, Petitioner raised the following arguments: he was deprived of his right to a fair trial as a result of the improper and prejudicial comments made by the prosecutor during cross-examination of the main defense witness; his sentence was harsh and excessive; and he was denied due process of law at sentencing. On November 8, 2013, the Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed the conviction but exercised its discretion to reduce the sentence on count one to 10 years in prison plus 5 years of post-release supervision. People v. Atchison, 111 A.D.3d 1319 (4th Dept. 2013). The New York Court of Appeals denied leave to appeal. People v. Atchison, 22 N.Y.3d 1137 (2014).

This timely habeas petition followed in which Petitioner asserts the following grounds for relief: (1) he was deprived of his right to a fair trial as a result of the improper and prejudicial comments made by the prosecutor during cross-examination of the main defense witness; and (2) he was denied due process of law at sentencing because the trial court relied on arrests and other information in his criminal record without ascertaining the reliability of that information. Respondent filed

an answer and memorandum of law in opposition to the petition, and Petitioner filed a reply.

For the reasons discussed below, Petitioner's request for a writ of habeas corpus is denied.

## III.  Discussion

### A.    Prosecutorial Misconduct During Cross-Examination

Petitioner asserts, as he did on direct appeal, that  the prosecutor committed misconduct during the cross-examination of Montgomery. Some background is necessary to put the objectionable questioning in context. Defense counsel initially objected to the prosecutor's question, "[T]he judge ruled that you were a material witness in this case, correct? And he had to do that because you wouldn't cooperate with us, correct?" The trial court sustained that objection. T.883. The prosecutor then asked, "You didn't cooperate with us, correct?" Montgomery answered, "Why should I cooperate? You want me to lie." T.883. The prosecutor continued in this vein, suggesting that Montgomery intentionally was hiding from the police and District Attorney's office. When the prosecutor accused Montgomery of not wanting to cooperate because she was scared of Petitioner, defense counsel again objected. Before the judge ruled, Montgomery retorted, "Man, I ain't scared of him. What's wrong with you? Look at my rap sheet. What am I scared of?" Defense withdrew his objection.

The prosecutor then asked, "You didn't come into the DA's office and tell me that you were scared to testify–" Montgomery interrupted him, stating, "I never told you that. Why you lying? He's lying." Defense counsel objected on hearsay and relevance grounds with regard to the prosecutor's question mentioning out-of-court conversations he had with Montgomery. Before the trial judge ruled on the objection, Montgomery answered, "I ain't never said I was scared. I said if you a snitch and [sic] can get killed. Now, that's what I said. That could be with anybody." The trial judge overruled defense counsel's previous objection, and defense counsel raised a new objection, since the witness had answered. See T. ("My new objection is [the prosecutor]'s testifying to facts not in evidence. . . . about some conversation that they had off the–it's not part of the record. It's not evidence."). The prosecutor replied that defense counsel had done "the same thing" by asking Montgomery about prior statements that she had given, and defense counsel disagreed. The trial judge ignored defense counsel's objection and stated, "So we're getting to another question now." The prosecutor proceeded to question Montgomery about her rap sheet.

On direct appeal, the Appellate Division agreed "that the prosecutor's questions about the witness's statements to him were improper[.]" Atchison, 111 A.D.3d at 1319 (citing People v. Paperno, 54 N.Y.2d 294, 300-01 (1981) (unsworn witness rule

-7-

generally stands for proposition that prosecutor may not inject his own credibility into the trial; rule is violated when prosecutor, by cross-examination, suggests existence of facts not in evidence); other citation omitted). However, the Appellate Division concluded, the trial court's "failure to sustain defense counsel's objection to the line of questioning [was] harmless error because "[t]he evidence of guilt [was] overwhelming, and there [was] no reasonable possibility that the jury would have acquitted defendant if the prosecutor had not improperly placed his own credibility at issue before the jury[.]" Id. (citing People v. Crimmins, 36 N.Y.2d 230, 237 (1975) (adopting the harmless error standard articulated in Chapman v. California, 368 U.S. 18 (1967), to be used on direct review of constitutional errors occurring at trial)). The Appellate Division noted that Petitioner admitted possessing the weapon but claimed "his possession [of the firearm] was temporary and innocent" as "the gun belonged to someone else, and the only time he possessed the weapon was when he threw it out of the window of his moving vehicle, which the police were pursuing." Id. However, the Appellate Division found, "[e]ven accepting [Petitioner]'s testimony as true, . . . his conduct was "utterly at odds with any claim of innocent possession[.]" Id. at 1319-20 (quoting People v. Williams, 50 N.Y.2d 1043, 1045 (1980) (finding evidence "utterly at odds with any claim of innocent possession" where, upon "discovering the gun, defendant removed the weapon and secreted it

in a new hiding place, removing it when it suited his own purpose and handling it in a manner which may be charitably characterized as reckless")).

While some courts in this Circuit have treated violations of the unsworn witness rule as mere errors of state law, the majority of courts have viewed them as the Appellate Division did in this case, namely, as instances of prosecutorial misconduct reviewable in a § 2254 proceeding. See, e.g., Mitchell v. Artus, No. 07 CIV. 4688 LTS AJP, 2008 WL 2262606, at *22 (S.D.N.Y. June 2, 2008) ("Like other claims of prosecutorial misconduct, a violation of the 'unsworn witness' rule results in a constitutional error 'only when the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair.'") (quoting Garofolo v. Coomb, 804 F.2d 201, 206 (2d Cir. 1986); other quotation omitted); Morales v. Miller, 41 F. Supp.2d 364, 378 (S.D.N.Y. 1999) (treating habeas petitioner's claim based on the violation of the "unsworn witness" rule as a trial error subject to Brecht harmless error test) (citing Nimmons v. Walker, No. 92 Civ. 5782 (JFK), 1995 WL 373446, at *3-*4 (S.D.N.Y. June 21, 1995)). The Second Circuit, on direct review of a federal conviction, also has found error when an attorney acts as an unsworn witness, for his "his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross

examination." <u>United States v. Locascio</u>, 6 F.3d 924, 933 (2d Cir. 1993), <u>cert.</u> <u>denied</u>, 511 U.S. 1070 (1994). The Court follows this approach here and analyzes the claim as a variety of prosecutorial misconduct.

Because the Appellate Division adjudicated Petitioner's prosecutorial misconduct claim on the merits, this Court must ask whether that ruling amounted to an unreasonable application of the Supreme Court's clearly established precedent on the issue of prosecutorial misconduct. <u>See</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 404-06 (2000); 28 U.S.C. § 2254(d)(1). As the Appellate Division's was not "contrary to" any clearly established Supreme Court precedent, Petitioner's remaining avenue for relief is to meet the "unreasonable application" prong of 28 U.S.C. § 2254(d)(1).

A claim of prosecutorial misconduct on habeas corpus is reviewed under "the narrow [standard] of due process, and not the broad exercise of supervisory power." <u>Floyd v. Meachum</u>, 907 F.2d 347, 353 (2d Cir. 1990) (citation omitted). The relevant question is whether "the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair." <u>Garofolo v. Coomb</u>, 804 F.2d 201, 206 (2d Cir. 1986) (citations omitted). Regardless of whether a prosecutorial misconduct claim is brought on direct or habeas review, the absence or presence of prejudice is central to the analysis. <u>See</u> <u>Smith v. Phillips</u>, 455 U.S. 209, 219 (1982) ("Past decisions of this Court demonstrate that the

touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.").

While the Court agrees with the Appellate Division that the prosecutor made himself an unsworn witness when he referenced the conversation with Montgomery, the Court cannot find that the Appellate Division unreasonably applied clearly established federal law in ruling that the error did warrant reversal of the conviction. This is not a case where the prosecutor engaged in a pervasive pattern of misconduct, such as repeatedly questioning Montgomery or other witnesses about facts not in evidence. Clearly established Supreme Court precedent teaches that criminal convictions are not to be lightly overturned solely on the basis of a prosecutor's inappropriate remarks in an otherwise fair proceeding. United States v. Young, 470 U.S. 1 (1985). In addition, during the final charge, see T.488, the trial court reiterated that lawyers' statements or questions are not evidence, and that the jury could only consider the evidence. See Mitchell v. Herbert, No. 01-CV-681, 2008 WL 342975 at *14 (W.D.N.Y. Feb. 6, 2008) (rejecting petitioner's habeas claim because, although the prosecutor's remark, which petitioner alleged violated the "unsworn witness" rule, was "improper, the trial court at [petitioner's] trial thereafter appropriately instructed the jury that this comment by the prosecutor was . . . 'not testimony that you can

consider'") (citations omitted); see also Mitchell v. Artus, No. 07 Civ. 4688(LTS)(AJP), 2008 WL 2262606, at *23 (S.D.N.Y. June 2, 2008) (similar). The Court cannot find that the improper question went beyond "ordinary trial error of a prosecutor" and amounted to "that sort of egregious misconduct" constituting "a denial of constitutional due process." Donnelly DeChristoforo, 416 U.S. 637, 647-48 (1974) (citations omitted).

### B.   Due Process Error at Sentencing

Petitioner contends that he was denied due process of law at his sentencing hearing because the trial court relied on his previous arrests which amounted to the improper consideration of "factors having no evidentiary support in the record." Petitioner's Reply Brief ("Reply") at 15 (Dkt #5). Petitioner argued on appeal the sentencing court was required to assure itself that the information regarding his prior criminal history was both reliable and accurate. Petitioner's Appellate Brief at 15-16 (citations omitted). The Appellate Division summarily rejected this contention as without merit. As discussed further below, the Appellate Division did not incorrectly apply federal law.

As a general rule, a judge "has discretion to consider a wide range of information concerning a defendant's background in arriving at an appropriate sentence." United States v. Romano, 825 F.2d 725, 728 (2d Cir. 1987) (citing United States v. Tucker, 404 U.S. 443, 446 (1972); other citations omitted). Thus, the Second

Circuit explained in Romano, a judge "may consider hearsay statements, evidence of uncharged crimes, dropped counts of an indictment and criminal activity resulting in an acquittal in determining sentence." Id. (citing United States v. Pugliese, 805 F.2d 1117, 1122 (2d Cir. 1986) (citations omitted)). However, as the United States Supreme Court reiterated in Gardner v. Florida, 430 U.S. 349 (1977), "the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause." Id. at 358. "Due process requires that a defendant be given an opportunity to assure the accurate presentation of reliable sentencing information to the . . . court." Romano, 825 F.2d at 728 (citing Townsend v. Burke, 334 U.S. 736, 741 (1948) (stating due process precludes a defendant from being sentenced on the basis of "materially untrue" statements or "misinformation").

Here, when the trial court referred during the sentencing hearing to the presentence report ("PSR") prepared by the probation department, neither Petitioner nor his trial counsel raised any objections to the contents of the PSR. In short, Petitioner did not contest the accuracy of any of the information contained in the PSR. On appeal, Petitioner faulted the trial court for basing the sentence on offenses "with no indicia of proof" that the arrests and underlying conduct were "reliable and accurate." Petitioner's Appellate Brief at 17. According to Petitioner, this procedure "offended fundamental tenets of due process." Id. However, as noted

-13-

above, Petitioner has never identified—at sentencing or on appeal—any "materially untrue" statements or "misinformation" either contained in the PSR itself or mentioned by the trial court at the hearing. The Court therefore finds Petitioner's due process claim too vague and conclusory to warrant habeas relief.

## IV.   Conclusion

For the reasons discussed above, Edgar Atchison's petition for writ of habeas corpus is denied, and the petition is dismissed. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2). Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. The Clerk of the Court is requested to close this case.

**SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         May 12, 2015

-14-